IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ROBERT E. MORLEY, JR., et al. )<br>      Plaintiffs, )<br>v. )<br>SQUARE, INC., et al., )<br>      Defendant. )<br>)<br>)<br>)<br>)<br>SQUARE, INC., et al., )<br>      Plaintiffs, )<br>v. )<br>REM HOLDINGS 3, LLC, )<br>      Defendant. ) | Case No. 4:14-cv-00172 -SNLJ<br><br><br><br>Case No. 4:10-cv-02243-SNLJ<br>CONSOLIDATED |

**PLAINTIFFS ROBERT E. MORLEY, JR. AND REM HOLDINGS 3, LLC'S
<u>NOTICE REGARDING MOTION TO COMPEL (DKT. NO. 141)</u>**

Plaintiffs REM Holdings 3 and Robert E. Morley, Jr. ("Plaintiffs") provide this notice to update the Court on the status of the parties' meet and confer efforts since the parties' September 11, 2015 conference with the Court. For the reasons below, Plaintiffs renew their request that the Court grant their motion to compel and deny the cross-motion filed by Defendants ("Square").

During the parties' telephonic hearing with the Court on Friday, September 11, 2015, the Court discussed the parties' positions regarding Plaintiffs' first outstanding motion to compel and Square's related cross-motion (Dkt. Nos. 141 and 150). With regard to the specificity of Plaintiffs' identification of Dr. Morley's trade secrets (which form the principal basis of Square's refusal to provide the discovery referenced in Plaintiffs' motion to compel), the Court appeared to indicate that the substantive descriptions provided by Plaintiffs provided sufficient specificity. However, the Court noted that certain of Plaintiffs' responses were voluminous, and requested

that Plaintiffs make another attempt at reorganizing and condensing their identification. Plaintiffs, though supposing that Square was unlikely to ever be satisfied, agreed to do so, and the Court ordered the parties to provide a status update after they met and conferred about whether Plaintiffs' new response mooted the cross-motions. Dkt. No. 215.

Taking the Court's request seriously, Plaintiffs immediately began working on their revised trade secret identification, and requested a phone call with Square two business days later. Ex. A, at 5. Plaintiffs hoped to get feedback from Square about exactly what level of specificity it required. Square would not meet and confer with Plaintiffs until 7:30 p.m. on Wednesday night. On that meet and confer and in an e-mail the next day, Square provided an explanation of the level of specificity that would allegedly resolve its concerns with Plaintiffs' trade secret identification. *Id.* at 3. Square's requirements included:

- A numbered list of Dr. Morley's trade secrets;
- An identification of each element of those trade secrets; and
- That the elements be listed in limiting fashion.

*Id.* Plaintiffs quickly confirmed that they intended to comply with even Square's overly stringent requirements (in the hopes the Court would not be further burdened), and provided that compliant trade secret identification later that night. *Id.* at 3, 1–2.[1] That identification was largely based on the handwritten list of trade secrets Dr. Morley had already provided in his deposition over two months ago. Ex. C. It met Square's criteria, providing three numbered trade secrets with specific elements set forth in a limiting fashion (that is, without statements such as "including but not limited to," etc.).

---

[1] Square will likely complain that the revised response it received Thursday night was "not final." Yet that identification of trade secrets—provided informally by e-mail in the interest of getting Square a response as soon as possible—was identical to the formal supplemental interrogatory response served the next day. Ex. B, at 41–42.

Nevertheless, on the day the parties' notice to the Court was due, Square insisted that it needed more time to review Plaintiffs' one page trade secret identification, and could not provide any insight into what issues, if any, Square would agree to moot in light of Plaintiffs' compliance with the Court's request.  Ex. D, at 10.  In other words, in the week since the Court ordered the parties to meet and confer about Plaintiffs' motion, Square had apparently given no thought whatsoever to what discovery it might provide should Plaintiffs meet its demands (which Plaintiffs did).  Square could not even confirm that Plaintiffs' plainly satisfactory trade secret identification mooted Square's cross-motion.  *Id.* at 4.  Plaintiffs reluctantly allowed Square a few more days to consider the issues internally, but Square agreed to provide a final response, and confer with Plaintiffs, no later than 5 p.m. on September 23, 2015.  *Id.* at 3.  When that day came, Square did not provide any response regarding what issues had been mooted.  In fact, Square even refused to meet and confer at all, and instead simply provided an unexplained response (after the agreed 5 p.m. deadline) stating that Plaintiffs' identification of trade secrets still lacked specificity.  *Id.* at 1.[2]

---

[2] This refusal by Square to meet and confer, which now spans all of its interactions with Plaintiffs, is a particularly pointed example of the delay tactics Square regularly employs in this case.  Even if meeting and conferring "in writing"—as Square requests—satisfied the Court's Local Rules (it does not), Square does not even make a colorable attempt to pretend its written correspondence amounts to "conferring" with Plaintiffs.  As shown in Exhibit D, Square simply waits until the very last minute before the parties' agreed deadline for conferring, and then sends a conclusory refusal to compromise.  Square asks no questions, offers no middle ground, provides no explanation for its complete refusal, and simply stands on its prior refusals.  Worse still, under the guise of "reviewing" the issues, Square consistently requests additional time to complete this "written meet and confer," as it did in this instance, when it very well could have provided its flat refusal days earlier.  This delay tactic must stop.  Indeed, with respect to the second status update the Court requested—which is due tomorrow, two weeks from the telephonic hearing—Square has not provided a single piece of information to Plaintiffs.  Ex. E. Plaintiffs suspect that Square will once again delay as long as possible before providing any information that may moot any issues in Plaintiffs' second motion to compel (Dkt. No. 168).  Square apparently has no intention of ever mooting any of the parties' discovery disputes unless the Court orders it to do so.

As Plaintiffs feared all along, Square never intended to accept any articulation of Dr. Morley's trade secrets as sufficiently specific. Square's cross-motion, its promises to confer with Plaintiffs, and its requests for additional time to consider Plaintiffs' trade secret identification have been nothing more than blatant delay tactics designed to postpone crucial discovery from taking place as long as possible. Because Square plainly does not intend to provide any discovery whatsoever unless the Court compels it to, Plaintiffs respectfully request the Court grant Plaintiffs' motion to compel as soon as possible, so that Square no longer delays providing essential discovery based on pure gamesmanship.[3] Dr. Morley has identified his trade secrets with far more specificity than required, and Square is out of excuses for withholding basic technical discovery it should have provided nine months ago. Further, Square has used the alleged lack of specificity of Dr. Morley's trade secrets to continue refusing discovery as recently as last week, in response to recently served interrogatories, requests for admission, and requests for production. Therefore, Plaintiffs request the Court reject Square's objections not only to the specific discovery listed in Plaintiffs' motion, but to any discovery Square resists because of the alleged lack of specificity of Dr. Morley's trade secrets.

---

[3] In their ongoing effort to return this case to the merits, Plaintiffs continue to be reluctant to request sanctions for Square's brazenly dilatory and obstructionist behavior. Plaintiffs note however, that the series of events described above amount to plain discovery gamesmanship by Square, which has become commonplace in this case. The Court would be well within its inherent authority if it chose to charge Square with Plaintiffs' costs for responding to Square's cross-motion, participating in evidently futile conferences and correspondence, and filing this Notice.

-5-

DATED:  September 24, 2015

Respectfully submitted,

**CALDWELL CASSADY & CURRY**

*/s/ Austin Curry*
Bradley W. Caldwell #24040630T
Email:  bcaldwell@caldwellcc.com
Jason D. Cassady #24045625T
Email:  jcassady@caldwellcc.com
John Austin Curry #24059636T
Email:  acurry@caldwellcc.com
**CALDWELL CASSADY & CURRY**
2101 Cedar Springs Road, Suite 1000
Dallas, Texas 75201
Telephone: (214) 888-4848
Facsimile: (214) 888-4849

David B.B. Helfrey, #35911 MO
Email: dhelfrey@sandbergphoenix.com
**SANDBERG PHOENIX & VON GONTARD**
600 Washington Avenue, 15th Floor
St. Louis, Missouri 63101
Telephone: (314) 231-3332
Facsimile: (314) 241-7604

William B. Cunningham, #20998 MO
Email:wcunningham@PolsterLieder.com
McPherson D. Moore, #26056 MO
Email: mmoore@PolsterLieder.com
**POLSTER LIEDER WOODRUFF &
LUCCHESI, L.C.**
12412 Powerscourt Dr., Suite 200
St. Louis, MO 63131
Telephone: (314)238-2400
Facsimile: (314)238-2401

**ATTORNEYS FOR PLAINTIFFS
ROBERT E. MORLEY, JR. AND
REM HOLDINGS 3, LLC**

-6-

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on September 24, 2015, the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon all counsel of record.

>*/s/ Austin Curry*
>Austin Curry