UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| **ROBERT E. MORLEY, JR., et al.** | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **Case No. 4:14cv172** |
| | ) | **Case No. 4:10cv2243 SNLJ** |
| | ) | **CONSOLIDATED** |
| **SQUARE, INC., et al.,** | ) | |
| | ) | |
| Defendants. | ) | |
| and | | |
| | ) | |
| **SQUARE, INC., et al.** | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| **REM HOLDINGS 3, LLC,** | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

Plaintiff Robert Morley ("Morley") and his company REM Holdings 3, LLC

("REM") (collectively, "Morley") brought this action against defendant Square, Inc. and

1

its founders, defendants Jack Dorsey and James McKelvey (collectively, "Square").[1]  This matter is before the Court on plaintiffs' motion to compel filed August 7, 2015 (#168).

The parties have worked out much of plaintiffs' motion without the Court's involvement.   The following matters remain for resolution:

**I.    Documents related to equity in Square and marital communications withheld as privileged.**

Square has withheld from production 340 documents containing information related to "company equity."   Defendants provided an updated privilege log adding detail, but plaintiffs maintain that the documents are not privileged and appear to reflect business advice (not solely privileged legal advice).   Plaintiffs therefor ask the Court to review these documents *in camera*, identifying the 340 log entries in dispute.   The descriptions for those entries are typically "Communication regarding legal advice concerning …" the following:

- Company equity, corporate formation, and governance.

- Customer refunds.

- Distribution of company equity to founders, early employees, and advisors, corporate formation, governance, financing, regulatory, and intellectual property.

---

[1] This matter consists of two consolidated actions.   Case No. 4:10-cv-2243 has been stayed in its entirety pending resolution of patent issues by the Patent and Trademark Office.   Morley and his company are the defendants in that case.   Morley and his company are the plaintiffs in Case No. 4:14-cv-172; the complaint in that matter includes three patent-related counts that are currently stayed, but a number of state-law counts are active and are the subject of discovery disputes addressed in this Memorandum & Order.   "Plaintiffs" in this memorandum therefore refers to Morley and his company.

- Company equity and capitalization table.

- Series A fundraising.

- Corporate strategy or structure.

- Distribution of company equity and draft document regarding same.

- Distribution of company equity to early employees and advisors.

- Distribution of company equity to Morley.

- Distribution of company equity to potential consultant.

The documents are typically communications between attorneys and Dorsey and/or McKelvey, but sometimes they are communications between Dorsey and McKelvey. Plaintiffs and defendants agree that business advice is not protected by the attorney-client privilege. *See Barfield v. Sho-Me Power Elec. Co-op.*, No. 2:11-CV-04321-NKL, 2014 WL 2575220, at *5 (W.D. Mo. June 9, 2014) (citing *In re Bisphenol-A (BPA) Polycarbonate Plastic Products Liab. Litig.*, No. 08-1967-MD-W-ODS, 2011 WL 1136440, at *7 (W.D. Mo. Mar. 25, 2011)). However, plaintiffs' own cited case, *Barfield*, upheld the privilege for documents "regarding corporate structure" and the "formation of a limited liability company," 2014 WL 2575220, at *5, and the documents at issue here reflect similar advice. As defendants point out, all but 25 of the documents for which plaintiffs seek production involve defendants' outside counsel. Although plaintiffs claim that those law firms provide generic business start-up advice as well as legal advice, nothing about the entries on defendants' privilege log suggest that defendants are trying to

3

claim that privilege applies to business advice. All of the topics listed in bullet points above reflect legal advice that would naturally be sought under the circumstances.

On the other hand, as noted above, plaintiffs raise questions about 25 communications that do not involve defendants' outside counsel. The Court will review those 25 documents *in camera.*

Next plaintiffs contend that defendants are wrongly claiming privilege over communications between McKelvey and his wife Anna Ntenta. Plaintiffs identify three documents that they claim are wrongly identified as privileged. (#237-3 at PL000250, 269, 270). Each of those communications took place after the two were married. The marital confidential communications privilege is recognized by federal law. *See United States v. Evans*, 966 F.2d 398, 401 (8th Cir. 1992). Plaintiffs state that Missouri law applies to this assertion of privilege, and that Missouri law does not protect spousal communications that are "purely business matters." *State ex rel. Boswell v. Curtis*, 334 S.W.2d 757, 763 (Mo. App. S.D. 1960). It appears that such an exception applies where the spouses are in a "joint business venture," however, and no one suggests Mrs. McKelvey was part of this business venture. *See T.C.H. v. K.M.H.*, 693 S.W.2d 802, 804 (Mo. banc 1985). Either way, defendants also claim that the communications are protected by the

attorney-client privilege because McKelvey was seeking legal advice from his wife, who is an attorney.[2] The communications are properly withheld as privileged.

## II. Financial, usage, and market share data.

Plaintiffs' Interrogatory No. 4 seeks quarterly financial data, including revenues, expenses, and profits. Defendants say they have produced hundreds of business records including profit and loss statements, balance sheets, and statements of cash flows. Interrogatory No. 5 seeks the same types of financial data but limited to "transactions involving a Square reader." Defendants protest that they do not track or compile such financial data.

Plaintiffs claim this information is critical to determining the significance of Morley's contributions to Square's success. Indeed, any calculation of damages would require the information plaintiffs seek. Although Square earns revenue primarily through use of the Square Reader, Square also earns revenue through transactions made via its Square Stand iPad reader and transactions in which credit card information is typed in manually. Plaintiffs suggest that defendants will surely provide this information to their experts in some form or another, as defendants refuse to confirm that it has no additional information responsive to the interrogatories in question. Defendants have provided plaintiffs with references to document Bates numbers that are apparently somewhat responsive, but plaintiffs complain defendants have not provided explanations of metrics

---

[2] Plaintiffs suggest that any advice from Mrs. McKelvey could not constitute legal advice because her specialty is real estate law. The Court is not convinced by that argument.

or calculations in any of the documents cited.  As the Court understands plaintiffs' argument, plaintiffs seek separate financial information attributable only to the use of the Square reader, but defendants have thus far refused to break out the Square-reader-only figures from the other services the company provides.  The Court shares plaintiffs' surprise at the defendants' inability to do so.  The information is necessary to plaintiffs' damages determination, and it must surely be available in light of the fact that defendants' entire business involves the transmission of credit card data from users to the company using one of at least three routes --- the Square Reader, the Square Stand iPad reader, or typed-in credit card information.  The defendants should provide the information plaintiffs seek or explain to the Court why it is not feasible within fourteen days.

Plaintiffs' Interrogatory 24 seeks information as to how "Square tracks or monitors the adoption or usage of any Square product by its customers/merchants/users" --- including the way Square tracks "each of the statistics described in Plaintiffs' Requests for Production 99-107."  Those Requests for Production seek information about users of Square's various products, along with the number and value of transactions for each of those products.  Defendants provided raw data and an explanation of the multiple sources of detailed usage data in Square's possession.  Plaintiffs state that defendants' response suggests that defendants have additional relevant information that has not been produced.  Defendants contend that plaintiffs' request is overly burdensome, e.g., "determining how all of Square's employees track adoptions and usage of all Square products is unduly burdensome [and] [t]here is no person who is aware of all the data available.  There is also

no list of data types stored in Square's databases." (#177 at 12 n.11.) Considering the nature of the dispute, defendants argue, they should not be obligated to mount the Herculean task of mining their systems for data.

Here again, it seems unlikely that a technology company is unable to answer these questions. As the Court understands the requests, plaintiffs want to know how Square tracks the use of its products and how Square tracks the number and value of each product's transactions. This information is related, of course, to the answers to Interrogatories 4 and 5, discussed above, and it is relevant to plaintiffs' claims. Again, the defendants should provide the information plaintiffs seek or explain to the Court why it is not feasible within fourteen days.

Finally, plaintiffs' Interrogatory 10 seeks "Square's market share in the mobile payments industry on a monthly basis since its inception." Defendants responded that although it did not have market share information for every month, Square had at one time determined certain statistics related to its business in relation to various markets. Defendants searched for and produced documents related to that project. Defendants cannot manufacture information where none exists, but, again, plaintiffs are concerned that defendants will provide this information to its experts. The parties are reminded that they are each under continuing obligations to supplement their discovery responses as information becomes available and, if such information does not exist, the respondent must specifically state as much.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiffs' motion to compel (#168) is **GRANTED in part** and **DENIED in part.**

**IT IS FURTHER ORDERED** that defendants shall produce *in camera* the 25 documents to which defendants refer at page 6 of their response memorandum (#177) within seven days.

**IT IS FINALLY ORDERED** that with respect to plaintiffs' Interrogatories 4, 5, and 24, defendants should provide the information plaintiffs seek or explain to the Court why it is not feasible within fourteen days.

Dated this   6th   day of November, 2015.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE