UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| ROBERT E. MORLEY, JR., et al. | ) | |
|---|---|---|
| Plaintiffs, | ) | |
| vs. | ) | |
| | ) | Case No. 4:14cv172 |
| | ) | Case No. 4:10cv2243 SNLJ |
| | ) | CONSOLIDATED |
| SQUARE, INC., et al., | ) | |
| Defendants. | ) | |
| and | | |
| | ) | |
| SQUARE, INC., et al. | ) | |
| Plaintiffs, | ) | |
| vs. | ) | |
| | ) | |
| REM HOLDINGS 3, LLC, | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

Plaintiffs Robert Morley ("Morley") and his company REM Holdings 3, LLC ("REM") (collectively, "Morley") brought this action against defendant Square, Inc. and its founders, defendants Jack Dorsey and James McKelvey (collectively, "Square").[1] This

---

[1] This matter consists of two consolidated actions. Case No. 4:10-cv-2243 has been stayed in its entirety pending resolution of patent issues by the Patent and Trademark Office. Morley and his company are the defendants in that case. Morley and his company are the plaintiffs in Case No. 4:14-cv-172; the

1

matter is before the Court on defendants' omnibus motion to compel discovery from plaintiffs and third parties David Chervitz and William Cunningham, filed September 1, 2015 (#192). Plaintiffs' response in opposition included a cross-motion for a protective order (#226), and briefing on these matters concluded on October 20, 2015.

Each of the disputed discovery matters is addressed in turn below.

**I.  Plaintiffs' privilege log**

Federal Rule of Civil Procedure 26(b)(5)(A) states that a party withholding otherwise discoverable information by claiming that it is privileged must "(i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed" without revealing the privileged or protected information itself. This is generally accomplished via a privilege log, which "may identify documents individually or by categories if that provides sufficient clarity for the court to rule on the asserted privilege claim." *State ex rel. Ford Motor Co. v. Westbrooke*, 151 S.W.3d 364, 367-68 (Mo. banc 2004).

The Court's Case Management Order ("CMO") states that "no party shall be required to identify on its privilege log any communications or documents dated on or after the filing of the lawsuit between and/or among any party, its inside counsel, and/or its outside counsel in this lawsuit that the party would otherwise have been obligated to so

---

complaint in that matter includes three patent-related counts that are currently stayed, but a number of state-law counts are active and are the subject of discovery disputes addressed in this Memorandum & Order.  "Plaintiffs" in this memorandum therefore refers to Morley and his company.

identify." (#58 at ¶ 6.)   That Order was entered on March 29, 2015, eight months after the two related cases (Nos. 4:10cv2243 and 4:14cv172) were consolidated.

Here, plaintiffs' privilege log did not include communications with counsel that post-dated the filing of the 2010 complaint.   Defendants did include such communications, with approximately 80 documents having been logged.   Defendants contend that plaintiffs must also log documents up until the filing of the 2014 complaint in order to comply with the CMO.   Plaintiffs respond that they have thousands of potentially responsive but privileged documents involving litigation counsel that would need to be logged if forced to comply with defendants' reading of the CMO.   Plaintiffs further point out that they are at a disadvantage because REM is a small company, and Morley and other members have been directly involved in the litigation and in communications with counsel.  In contrast, plaintiffs suggest defendants have been able to limit their "relevant custodians" of documents in such a way as to limit the number of responsive documents.

Ultimately, though, because the commonality and overlap between the two cases necessitated their consolidation, the suspension of the privilege log requirement relates back to the original filing in 2010.   Furthermore, the thousands of additional documents in question are undoubtedly privileged communications, and, as defendants themselves acknowledge, communications with litigation counsel are not logged in the ordinary case. (*See* #193 at 10.)   Nonetheless, defendants claim that such a log is justified here for the reasons set forth in their motion to compel under the crime-fraud exception (#189).   This

Court has denied defendants' crime-fraud motion and declines to order the unnecessary logging of privileged communications following the filing of the 2010 complaint.

## II. Attempts to secure litigation funding or investment

Since 2011, plaintiffs have sought funding from more than ten third parties for their disputes with defendants. Defendants seek production of communications with those third-party investors, but plaintiffs are withholding approximately 21 documents under a claim of privilege or work product protection. Defendants maintain that the documents are not privileged because, at the very least, any attorney-client advice or work product protection that may have existed lost its protection when it was voluntarily shared with litigation funders.

"The work product doctrine was designed to prevent unwarranted inquiries into the files and mental impressions of an attorney and recognizes that it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." *Simon v. G.D. Searle & Co*., 816 F.2d 397, 400–02 (8th Cir. 1987) (internal quotations omitted), *quoted in In re Chrysler Motors Corp. Overnight Evaluation Program Litig.*, 860 F.2d 844, 846 (8th Cir. 1988). "A party can waive protection for work-product documents by sharing those documents with third parties. However, disclosure of documents protected by the work product doctrine to third-parties does not necessarily waive the work product immunity." *Navigators Mgmt. Co. v. St. Paul Fire & Marine Ins. Co*., No. 4:06CV1722SNLJ, 2009 WL 465584, at *5 (E.D. Mo. Feb. 24, 2009). Such disclosure waives work product protection only if it "substantially increases the

opportunities for potential adversaries to obtain the information." *E.E.O.C. v. Woodmen of the World Life Ins. Society*, No. 8:03CV165, 2007 WL 1544772, *3 (D. Neb. March 23, 2007) (citing 8 Wright, *et al* ., *Federal Practice & Procedure*, Civ2d § 2024 (1994)).

Plaintiffs maintain that they had either written or oral confidentiality agreements with the third parties at issue here. And, plaintiffs point out, litigation funders and banks have an inherent interest in maintaining the confidentiality of potential clients' information, so plaintiffs had an expectation that its documents would be treated as secret. Indeed, the Northern District of Illinois observed that "[w]ith or without a confidentiality agreement, it could be argued that a prospective funder would hardly advance his business interests by gratuitously informing an applicant's adversary in litigation about funding inquiries from that company." *Miller UK Ltd. v. Caterpillar, Inc.*, 17 F. Supp. 3d 711, 738 (N.D. Ill. 2014). Other federal courts hold that the presence of a written nondisclosure agreement preserve work product protection , though their holdings do not address the absence of a written agreement. *See Doe v. Soc'y of Missionaries of Sacred Heart*, No. 11-CV-02518, 2014 WL 1715376, at *4 (N.D. Ill. May 1, 2014) (holding no waiver of work product protection for documents disclosed to litigation funding company pursuant to a nondisclosure agreement); *Devon It, Inc. v. IBM Corp.*, No. CIV.A. 10-2899, 2012 WL 4748160, at *1 (E.D. Pa. Sept. 27, 2012) (same); *Mondis Tech., Ltd. v. LG Electronics, Inc.*, No. 2:07-CV-565-TJW-CE, 2011 WL 1714304, at *3 (E.D. Tex. May 4, 2011) (same). Plaintiffs maintain that because they had an expectation of confidentiality with each of the third parties, they did not waive any attorney work product protection, and that

a written nondisclosure agreement is not required. *See MillerUK*, 17 F. Supp. 3d at 738. In *MillerUK*, the court held that defendant had failed to show that plaintiff made disclosures to the litigation funders "under circumstances that *substantially* increased the likelihood [defendant] would learn of them." *Id.* (emphasis in original). This is the case here. Plaintiffs' declaration and supporting documents confirm that they had a reasonable basis for expecting confidentiality from the recipients of their work-product protected information.

In the alternative, defendants seek production of the 21 documents with redactions of the protected information while revealing the underlying facts conveyed to the litigation funders. That request will be granted. Accordingly, the subpoenas are quashed only to the extent they seek protected information. Third party subpoena recipients shall provide their documents to plaintiffs so that plaintiffs may prepare them for production in compliance with this order.

### III. Communications with co-owners

Defendants also seek approximately 200 documents involving Morley and REM's other co-owners and/or lawyers: non-attorneys Baebler and Bruce Grench and attorneys David Chervitz, William Cunningham, and Kirk Williams.

Defendants contend that plaintiffs are improperly withholding business or financial documents as privileged. This Court addressed the converse of this matter in plaintiffs' motion to compel production (#168), in which plaintiffs argued that defendants were

improperly withholding business/financial documents as privileged. This Court noted that

> Plaintiffs and defendants agree that business advice is not protected by the attorney-client privilege. *See Barfield v. Sho-Me Power Elec. Co-op.*, No. 2:11-CV-04321-NKL, 2014 WL 2575220, at *5 (W.D. Mo. June 9, 2014) (citing *In re Bisphenol-A (BPA) Polycarbonate Plastic Products Liab. Litig.*, No. 08-1967-MD-W-ODS, 2011 WL 1136440, at *7 (W.D. Mo. Mar. 25, 2011)). However, plaintiffs' own cited case, *Barfield*, upheld the privilege for documents "regarding corporate structure" and the "formation of a limited liability company," 2014 WL 2575220, at *5, and the documents at issue here reflect similar advice.

(#266 at 3.) Accordingly, this Court found that the communications that included a lawyer were appropriately withheld as privileged; however, because 25 of the withheld documents did not include a lawyer, the Court instructed the defendants to submit those documents *in camera*. Having reviewed plaintiffs' privilege log, the Court will order the same result here with respect to the disputed documents.

However, the defendants' motion as it pertains to plaintiffs' communications with attorney David Chervitz is situated differently. As this Court previously held, Mr. Chervitz represented defendants McKelvey and Square between May 21, 2009 and August 23, 2009 for "services rendered in obtaining" one of the patents at issue in this case. (#36 at 2.) Plaintiffs and Chervitz agreed to produce documents "that relate to inventorship with respect to the '729 patent." However, that leaves 22 withheld documents between Morley and Chervitz between May and September 2009. The Court holds that all documents created during the period in which Chervitz represented McKelvey and Square must be produced to defendants.

7

The next category of documents involves Richard Meives, who is an attorney who purportedly advised Morley in connection with his 2009 negotiations with Square. There are 17 documents withheld as privileged reflecting communications with Meives. Defendants argue that Morley waived any privilege over these communications because, on September 22, 2009, Morley forwarded to Dorsey Meives's "unedited thoughts after his review of [certain Square] documents." Those "thoughts" contained Meives's legal advice to Morley about negotiations between Morley and defendants in 2009. Defendants therefore contend that plaintiffs have waived the attorney-client privilege and that the waiver applies to the full subject matter of the communications. Indeed, the "attorney/client privilege is waived by the voluntary disclosure of privileged communications, and courts typically apply such a waiver to all communications on the same subject matter." *PaineWebber Grp., Inc. v. Zinsmeyer Trusts P'ship*, 187 F.3d 988, 992 (8th Cir. 1999). Plaintiffs maintain that this is a special case because, in essence, Meives was negotiating for Morley --- rather than write to Dorsey himself, Meives invited Morley to act as go-between, stating in the e-mail "feel free to add your own thoughts and forward this e-mail to the Square people." The e-mail is clear on its face that it was intended to be read by Morley's adversaries. Morley did not waive his attorney-client privilege on all related documents when he sent Meives's e-mail to Square.

**IV.     Communications using Morley's Washington University e-mail address**

Next, defendants protest plaintiffs' withholding of more than 150 documents sent to or received from Morley's Washington University in St. Louis ("WashU") e-mail address

8

as privileged. WashU's computer use policy clearly states that the University maintains a right to capture and inspect any data stored or transmitted using its network and that the policy states "use of University resources for personal commercial gain…is inappropriate and possibly illegal." Defendants argue that because Morley could not have had an expectation of privacy or confidentiality while sending or receiving e-mail, then no privilege can attach. Defendants cite several cases in support. *Dombrowski v. Governor Mifflin Sch. Dist.*, No. CIV.A. 11-1278, 2012 WL 2501017, at *6 (E.D. Pa. June 29, 2012); *Hanson v. First Nat. Bank*, No. CIV.A. 5:10-0906, 2011 WL 5201430, at *5 (S.D.W. Va. Oct. 31, 2011); *Leor Exploration & Prod. LLC v. Aguiar*, No. 09-60136-CIV, 2009 WL 3097207, at *4 (S.D. Fla. Sept. 23, 2009); *Sims v. Lakeside Sch.*, No. C06-1412RSM, 2007 WL 2745367, at *1 (W.D. Wash. Sept. 20, 2007). In those cases, however, the e-mail accounts in question were kept on servers owned by the opposing party. That is not the case here. Furthermore, in *Sims*, the court held that any material plaintiff "created to communicate with his attorney and his spouse are protected under the attorney-client privilege and the marital communications privilege," despite having been communicated using the defendant's e-mail server. *Sims*, 2007 WL 2745367 at *1. The *Sims* court noted that "public policy dictates that such [privileged] communications shall be protected to preserve the sanctity of communications made in confidence." *Id.* at *2 (citing *United States v. Louisville & Nashville R.R.*, 236 U.S. 318, 336 (1915)). Morley did not sacrifice his attorney-client privilege when he communicated with his attorneys using his WashU e-mail address. Although defendants claim Morley violated WashU policy against using

the e-mail system for "commercial gain," the evidence is that Morley was unaware of that policy and that the restriction appears to apply not to attorney-client communications but rather to overt commercial transactions using "University resources." Accordingly, Morley's e-mails with his attorneys using his WashU e-mail account remain protected from disclosure.

V. **Communications with various other third parties**

Defendants next argue that plaintiffs are improperly withholding communications with Professor Doug Lichtman, who was somehow related to a litigation funder, the Burford Group. As noted, plaintiffs' declaration and supporting documents confirm that they had a reasonable basis for expecting confidentiality from the litigation funder recipients of their work-product protected documents. Thus, to the extent that the communications exchanged with Prof. Lichtman actually include attorney work-product protected information, those documents should be treated the same as the documents addressed above at Section II.

Defendants also contend that plaintiffs' communications with REM intern Audrey Leeka that include work-product cannot be withheld because defendants believe she could not have been "trusted" with confidential information. Again, plaintiffs have sufficiently supported their expectation of confidentiality. Ms. Leeka was a party to a confidentiality agreement and was assigned to work with outside counsel for REM as part of her internship. It is therefore not surprising that she would have encountered privileged or

work-product protected information, and communications with her that included such information were properly withheld.

The final group of "other third parties" includes five individuals listed on plaintiffs' privilege log for whom, defendants say, plaintiffs have provided insufficient information. Plaintiffs responded that they have provided additional detail about those individuals (who were attorneys, staff for attorneys, and an expert witness). Defendants still maintain that they lack sufficient detail, but the Court holds that the descriptions are sufficient as stated in defendants' memorandum (#193). No further supplementation is required from plaintiffs on that matter.

## VI. Communications concerning 2013 mediation

Morley and REM mediated with the 2010 lawsuit parties McKelvey and Square in April 2013. The parties to that mediation agreed that that statements made and materials generated during the mediation would "not be discoverable or admissible as evidence or as an admission in any litigation." However, defendants now seek disclosure of Morley's communications with the mediator in defiance of that agreement.[2] This Court's Local Rules even state that "[a]ll written and oral communications made or disclosed to the neutral are confidential and may not be disclosed." E.D. Mo. L. R. 16-6.04. Defendants contend that Morley spoke about communications with the mediator at his recent deposition and therefore he has abandoned the "privilege." The Court has reviewed the

---

[2] Defendants suggest that because Dorsey was not a party to the mediation or its confidentiality agreement, that the agreement should not apply to him. However, that Dorsey did not sign the agreement does not give Dorsey standing to ask the parties to breach that contract.

11

deposition transcript, and it appears that Morley's statements regarding the mediation were innocuous. Further, Morley raised the mediation in connection with defense counsel's question regarding whether Morley had "reach[ed] out" to Dorsey and McKelvey to encourage them to "do the right thing." (#247-6 at 7.) Later, defense counsel asked Morley about what he had told the mediator about Morley's status as a founder. (*Id.* at 9.) The Court will not construe Morley's responses to defense counsel's likely improper fishing expedition as a waiver of the confidentiality agreement. Further, the thrust of defendants' arguments about these matters is that they believe the mediation briefing will expose the "fraudulent" nature of plaintiffs' claims. This Court has already ruled against defendants on their crime/fraud motion. Their request for confidential mediation documents is also denied.

### VII. Morley's testimony "snap back"

Morley testified at his deposition about discussions with his business partner, Bruce Baebler, regarding what they called the "Winklevoss gambit." The phrase "Winklevoss gambit" was used in privileged e-mails with Baebler and counsel. Defendants argue that that testimony is a waiver as to any privilege that may otherwise apply and is highly probative of the "fraud" defendants argued in that motion. This Court held in the memorandum and order on defendants' crime-fraud motion that "these facts simply do not support a 'good faith belief' that Morley is now engaged in a fraudulent attempt to prove up a partnership or joint venture." (#258 at 9.) Morley has attempted to "snap back" the testimony pursuant to Paragraph 16.1 of the Protective Order entered in this case, which

allows for a party to request the return or destruction of "inadvertently produced Discovery Material." (No. 4:14cv172, #59.) The parties dispute whether Morley may "snap back" this testimony under the terms of Protective Order. Although the parties appear to agree that the testimony revealed privileged information, the Court finds that, having reviewed the testimony, Morley's statements about the Winklevoss gambit revealed only that he and Baebler referred to the "Winklevoss gambit" in relation to Morley's research on a possible cause of action for unjust enrichment. The fact that Baebler and Morley referred to the Winklevoss gambit is a fact, not a communication to an attorney. The deposition testimony itself does not state that the fact was conveyed to an attorney, and, to the extent that it might be construed as such, the Court will not permit defendants to use such testimony as evidence.

## VIII. Plaintiffs' Cross Motion for Protective Order

Finally, plaintiffs seek an order protecting Morley from "further harassment" and forbidding Square from "pursuing any further discovery that attempts to pierce Dr. Morley's privilege and work product, and quash the… discovery requests that are designed for that purpose." (#226 at 34.) As this Court is granting the quashing of subpoenas to the extent they cover protected information, *see* Section II, *supra*, the motion is granted in part. However, the Court declines to enter a protective order addressing plaintiffs' other grievances at this time.

13

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion to compel (#192) is **DENIED** in part and **GRANTED** in part.

**IT IS FURTHER ORDERED** that plaintiffs shall comply with the terms of this memorandum regarding production of redacted documents no later than seven days from the date of this Order.

**IT IS FURTHER ORDERED** that plaintiffs shall produce *in camera* within seven days the documents withheld on the basis of attorney-client privilege that do not include an attorney as a recipient or sender.

**IT IS FINALLY ORDERED** that plaintiffs' motion for a protective order (#226) is **GRANTED** in part and **DENIED** in part as discussed herein.

Dated this   18th   day of November, 2015.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE